## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

               Plaintiff,

    vs.                         **Case No. 06-40049-01-RDR**

HOWARD REED DYER,

               Defendant.

_____

### <u>O R D E R</u>

The defendant is charged in a two-count indictment.  He is charged with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1)[Count 1] and possession of a stolen firearm in violation of 18 U.S.C. § 924(a)(2)[Count 2].  The defendant has filed a motion to suppress.  The court has conducted a hearing on the motion and is now prepared to rule.

In his motion and supplement, the defendant seeks to suppress statements he made to law enforcement officers while he was standing on his front porch on August 8, 2005.  He further seeks to suppress all evidence seized from his possession in connection with residential burglaries in Wabaunsee County, Kansas.  The defendant argues that (1) his decision to speak with law enforcement officers was predicated on supposed promises of leniency, and thus rendered his statements involuntary; (2) there was insufficient evidence to demonstrate that the shotgun was connected with criminal activity, and thus the seizure of the shotgun was improper under the plain

view doctrine; and (3) his consent to search his residence was involuntary because he was told that a search warrant would be obtained if he refused consent.

After carefully reviewing the evidence presented at the hearing, the court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. In August 2005 Robert Hoskins, a deputy with the Wabaunsee County Sheriff's Department, was investigating some residential burglaries that had occurred in Wabaunsee County. Two suspects were eventually identified. After talking to one of them, Michael Shelly, Deputy Hoskins learned that some of the stolen property had been sold to a "Reed" who resided in Topeka, Kansas. Shelly drew a map of Reed's residence. Deputy Hoskins traveled to Topeka and did some surveillance on the residence identified in the drawing by Shelly. He learned that a car nearby was registered to Howard Reed Dyer.

2. Deputy Hoskins went to the Topeka Police Department to obtain some assistance so that an attempt could be made to talk with the person to whom the property had allegedly been sold. On August 27, 2005 Deputy Hoskins and five Topeka police officers went to the residence identified by Shelly.

3. Two officers from the Topeka Police Department went to the door of the residence and knocked. A white male, later identified

as the defendant, came to the door.  The defendant stood on the stoop of the residence, with the door to the residence open.  The Topeka officers indicated who they were and explained they were investigating a stolen property report.  Deputy Hoskins then came forward and explained the circumstances in more detail.

4.  Deputy Hoskins told the defendant that Shelly had been arrested, and he had indicated he sold some stolen property to someone at this residence.  This property included a lever action shotgun, an unusual firearm.  The defendant initially told Deputy Hoskins that he did not know anything about the stolen property.  Deputy Hoskins immediately noticed through the open door what he believed was the stolen shotgun leaning against a wall just inside the door.  He told the defendant that he thought the shotgun inside the door was stolen.

5.  The defendant said that he did not deal with guns, but his partner might have purchased it.  He offered to retrieve it and give it to them.  In the interests of officer safety, Deputy Hoskins did not allow the defendant to retrieve the shotgun.  The defendant allowed Deputy Hoskins and one of the Topeka police officers to enter his house and retrieve the shotgun.

6.  After he took possession of the shotgun, Deputy Hoskins had another conversation with the defendant.  He told the defendant that the stolen property, which included a class ring and a wedding ring, had sentimental value to its owners.  He explained that he

3

had no authority to arrest him because he was outside his jurisdiction. He said he would provide the Wabaunsee County Attorney with a report of what occurred and the amount of cooperation he had provided. He told the defendant he just wanted to get the property back to its owners. Deputy Hoskins further explained that he believed be could obtain a search warrant for his residence and that this could be a "short evening or a long evening." He did not, however, threaten the defendant or promise him anything.

7. At this point, the defendant allowed the officers into his residence to retrieve the stolen property. The defendant readily found the property in question and gave it to Deputy Hoskins. Deputy Hoskins found the defendant to be very cooperative. As the officers were retrieving the property, one of the officers noticed a parole release document on the wall. Prior to that time, the officers were unaware that the defendant might be a felon. Once the property had been gathered, Deputy Hoskins made a list of it and had the defendant sign it. The officers then left the defendant's residence.

8. Deputy Hoskins and the officers returned to the Topeka Police Department. At that time, it was determined that the defendant was a felon.

*Conclusions of Law*

1. The defendant initially argued that his statements to

4

Deputy Hoskins and the other law enforcement officers were involuntary because they were made pursuant to promises of leniency. "Whether a defendant's incriminating statements were made voluntarily must be assessed from the totality of the circumstances, looking both at the characteristics of the defendant and the details of the interrogation." United States v. Rith, 164 F.3d 1323, 1333 (10th Cir. 1999). "The essence of voluntariness is whether the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." Id. (citing Miller v. Fenton, 474 U.S. 104, 116 (1985)). In determining voluntariness of a suspect's statement, courts consider several factors, including: "'(1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment.'" Id. (quoting United States v. Glover, 104 F.3d 1570, 1579 (10th Cir. 1997)).

    2.  The court finds the defendant's conversation with Deputy Hoskins and the officers on May 12, 2005 was voluntary. The court finds no evidence of any threats or promises made during the course of the meeting. The officers explained their reason for being at the defendant's residence, and the defendant clearly agreed to talk with them. Deputy Hoskins only told the defendant that his

statements and conduct would be made known to the Wabaunsee County Attorney.    The court finds no coercion from this statement. Accordingly, the court finds no basis for the initial argument raised by the defendant.

3.   A law enforcement officer may seize items under the plain view doctrine as long as he adheres to the three-prong test established in Horton v. California, 496 U.S. 128, 136-37 (1990): (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent--i.e., the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.

4.   The defendant challenges only the second aspect of the Horton test.   He argues that the incriminating character of the shotgun was not immediately apparent because (1) there was no evidence it was identifiable as the stolen firearm from Wabaunsee County; and (2) there are great numbers of firearms in residences across this country.

5.   The defendant has overlooked the testimony of Deputy Hoskins on the distinguishing features of this firearm.   Deputy Hoskins specifically noted that the firearm he was seeking was rare, a lever action shotgun.   He noted that he had only seen five of these types of shotguns during his career.   Given the unusual

6

nature of the shotgun, coupled with the information he had on where the property had been sold, the court finds that there was probable cause to believe that the shotgun that Deputy Hoskins saw through the open door was evidence from a crime.  Accordingly, the court believes the shotgun was properly seized by Deputy Hoskins.

6.  Finally, the defendant suggests that his consent to search his residence was tainted by Deputy Hoskins' suggestion that he could obtain a search warrant and this could be a "long evening or a short evening."  We must disagree.  Whether a party has voluntarily consented to a search is a question of fact that the district court must evaluate in light of the totality of the circumstances.  Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).  In order to establish voluntariness, the government must "proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given" and "prove that this consent was given without implied or express duress or coercion."  United States v. McRae, 81 F.3d 1528, 1537 (10th Cir. 1996) (internal quotations and citation omitted).  The encounter between the defendant and the officers occurred at his residence. The defendant had been advised that he was not going to be arrested.  As recounted by Deputy Hoskins, the conversation did not occur in a coercive environment.  The statement made by Deputy Hoskins that this could be "a long evening or a short evening" does not preclude voluntary consent.  See United States v. Creech, 221

7

F.3d 1353, 2000 WL 1014868 (10th Cir. 2000) (table case) (officer's threat to get warrant did not negate consent to search); <u>United States v. Jones</u>, 9 F.3d 118, 1993 WL 470749 (10th Cir. 1993) (table case) (threat to obtain a search warrant does not, by itself, vitiate voluntary consent). Based upon a totality of the circumstances, the court finds that the consent to search given by the defendant was voluntary.

7.   In sum, the court finds no Fourth Amendment violations through the conduct and actions of law enforcement officers at the defendant's residence on August 27, 2005. The defendant's motion to suppress shall be denied.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress (Doc. # 21) be hereby denied.

**IT IS SO ORDERED.**

Dated this 29th day of September, 2005 at Topeka, Kansas.


                    s/Richard D. Rogers
                    United States District Judge